# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ROBIN SPENCE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV248 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Robin Spence Harris, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of December 24, 2012. (Tr. 205-11.) Upon denial of that application initially (Tr. 96-109, 133-41) and on reconsideration (Tr. 110-24, 143-50), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 151-52). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 32-81.) The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act. (Tr. 11-26.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 9-10, 191-92, 391-92), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through June 30, 2017.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since December 24, 2012, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: bipolar disorder, anxiety disorder, and obesity.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except that [Plaintiff] must have the option to alternate between a [sic] sitting and standing, in that for every 45 minutes of standing [Plaintiff] requires 15 minutes of sitting. [Plaintiff] can occasionally climb ramps and stairs, but is unable to climb ladders, ropes, or scaffolds. [Plaintiff] can have no more than occasionally [sic] exposure to extreme heat, cold, or humidity. [Plaintiff] cannot work around workplace hazards such as unprotected heights, moving machinery, or bodies of water. [Plaintiff] can perform simple, routine, repetitive tasks, involving no more than simple, short instructions, simple work-related decisions, few work-related changes, and is unable to perform work at a fixed production rate or pace. [Plaintiff] is unable to interact with the general public, but can occasionally interact with coworkers and supervisors.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from December 24, 2012, through the date of this decision.

(Tr. 16-26 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope

of . . . review of [such a] decision . . . is extremely limited."
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has
not established entitlement to relief under the extremely limited
review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a
reviewing court must uphold the factual findings of the ALJ
[underlying the denial of benefits] if they are supported by
substantial evidence and were reached through application of the
correct legal standard." Hines, 453 F.3d at 561 (internal brackets
and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion.'"
Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting
Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of
more than a mere scintilla of evidence but may be somewhat less
than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th
Cir. 2001) (internal brackets and quotation marks omitted). "If
there is evidence to justify a refusal to direct a verdict were the
case before a jury, then there is substantial evidence." Hunter,
993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[2]  "To regularize the

---

[2]  The Act "comprises two disability benefits programs.  [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed.  The Supplemental Security Income Program . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . .

adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is

_____

for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65.  If, at this

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

## B. Assignment of Error

Plaintiff's sole assignment of error contends that "[t]he ALJ erred by failing to analyze the opinion evidence from every treating and examining source in accordance with the regulations, [SSA] policy, and Fourth Circuit precedent." (Docket Entry 12 at 3 (bold font, underscoring, and single-spacing omitted).) According to Plaintiff, "[t]he ALJ failed to provide 'good/specific/supported' reasons for rejecting the work preclusive limitations" offered by treating psychiatrist Dr. Shamsher S. Ahluwalia, treating therapist Kristina Odom,[6] and consultative psychiatric examiner Dr. Daniel W. Bradford (<u>id.</u> at 8 (bold font, underscoring, and single-spacing omitted)), and neglected to evaluate those opinions under the factors listed in 20 C.F.R.

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[6] Certain medical records refer to Kristina Odom as Kristina Saravia (<u>see, e.g.</u>, Tr. 644); however, for ease of reading, this Recommendation will refer to her as "Therapist Odom."

§ 404.1527(c) (see id. at 9-11). According to Plaintiff, those errors by the ALJ qualify as prejudicial, because the medical opinions at issue "(1) contain far greater, and more detailed limitations than contained within the ALJ's RFC finding; and (2) met Plaintiff's burden to come forward with evidence establishing that she is 'disabled'" (id. at 7). Those contentions fall short.

1.   Opinions of Dr. Ahluwalia

Dr. Ahluwalia completed an undated "Mental Health Questionnaire" (Tr. 750-52) in which he opined that Plaintiff suffered from multiple symptoms of depression, mania, and anxiety (see Tr. 750-51), which resulted in "clear impairment in social emotions and occupational functioning" (Tr. 751). Dr. Ahluwalia further opined that Plaintiff's symptoms caused her to suffer marked limitation in her ability to complete daily activities and function socially, moderate limitation in her ability to maintain concentration, persistence, or pace, and extreme "[e]pisodes of deterioration or decompensation in work or work-like settings." (Tr. 752.) According to Dr. Ahluwalia, Plaintiff would likely miss work more than four days per month as a result of her impairments. (Id.)

The ALJ analyzed and weighed Dr. Ahluwalia's opinions as follows:

> [Dr. Ahluwalia's] opinion is given little weight.
> Although a treating source, Dr. Ahluwalia's opinions are
> not consistent with evidence that [Plaintiff] is able to

bathe, feed, and dress herself, and has been assessed as having no limitations in activities of daily living [(Tr. 287, 631, 669)]. His opinion is also inconsistent with evidence that [Plaintiff] experienced improvement with medication, and has been described as stable recently in the record [(Tr. 757, 763, 766, 768, 770, 776, 778, 780, 782, 849, 860, 916, 919, 926)].

(Tr. 23 (emphasis added).)

Plaintiff first contends that "the ALJ did not acknowledge or discuss the [SSA]'s clear preference for treating source evidence" (Docket Entry 12 at 9 (quoting 20 C.F.R. § 404.1527(c)(2)(ii) ("'[W]hen the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.'" (bold font omitted))), and notes that "[t]he ALJ did not find, or even suggest, that Dr. Ahluwalia . . . lack[ed] 'reasonable knowledge' of Plaintiff's impairments" (id. at 10). However, as emphasized above, the ALJ expressly recognized Dr. Ahluwalia as "a treating source." (Tr. 23.)

Next, Plaintiff asserts that, "in the Fourth Circuit, the opinion of a claimant's treating physician must be given great weight and may only be disregarded if there is 'persuasive contradictory evidence.'" (Docket Entry 12 at 10 (emphasis omitted) (quoting Johnson v. Barnhart, 434 F.3d 650, 655 (4th Cir. 2005), and Craig, 76 F.3d at 590 (in turn quoting Coffman v. Bowen,

829 F.2d 514, 518 (4th Cir. 1987))).)[7] However, that phrasing of the "treating physician rule" no longer represents the governing standard. See Stroup v. Apfel, No. 96-1722, 205 F.3d 1334 (table), 2000 WL 216620, at *5 (4th Cir. Feb. 24, 2000) (unpublished) ("The 1991 regulations supersede the 'treating physician rule' from our prior case law."); Shrewsbury v. Chater, No. 94-2235, 68 F.3d 461 (table), 1995 WL 592236, at *2 n.5 (4th Cir. Oct. 6, 1995) (unpublished) ("As regulations supersede contrary precedent, the cases cited by [the plaintiff] defining the scope of the 'treating physician rule' decided prior to 20 C.F.R. § 416 and related regulations are not controlling." (internal citation omitted)); accord Brown v. Astrue, Civil Action No. 10-1238, 2013 WL 937549, at *4 (D. Md. Mar. 8, 2013) (unpublished); Benton v. Astrue, Civil Action No. 0:09-892, 2010 WL 3419272, at *1 (D.S.C. Aug. 30, 2010) (unpublished); Pittman v. Massanari, 141 F. Supp. 2d 601, 608

---

[7] Plaintiff's manner of citation to Johnson and Craig creates a misleading impression, in that neither case endorsed the formulation for the treating physician rule Plaintiff would attribute to them; to the contrary Johnson merely included the phrase "persuasive contradictory evidence" in a parenthetical characterizing Craig as "upholding ALJ's rejection of treating physician's opinion because the record contained persuasive contradictory evidence and the treating physician's notes contradicted his opinions," Johnson, 434 F.3d at 655, and Craig simply used the words "persuasive contradictory evidence" in repeating the plaintiff's invocation of Coffman, 829 F.2d at 517, see Craig, 76 F.3d at 589. Moreover, in Johnson, the Fourth Circuit did not apply any formulation of the treating physician rule because it determined that the opinion at issue was "not relevant to [its] inquiry," Johnson, 434 F.3d at 655, and in Craig, the Fourth Circuit applied the post-Coffman version of the treating physician regulation which allows for discounting of treating physician opinions not only where the record "contains persuasive contradictory evidence," but also where such opinions are "inconsistent with other substantial evidence," Craig, 76 F.3d at 590. In other words, Johnson and Craig, at most, recognize that "persuasive contradictory evidence" provides a sufficient basis to disregard a treating physician opinion, without making such evidence necessary to do so.

(W.D.N.C. 2001); <u>Ward v. Chater</u>, 924 F. Supp. 53, 55-56 (W.D. Va. 1996).

Under the proper standard, the treating source rule does generally require an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. <u>See</u> 20 C.F.R. § 404.1527(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. <u>See</u> 20 C.F.R. § 404.1527(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule detail, a treating source's opinion, like all medical opinions, deserves deference <u>only</u> if well-supported by medical signs and laboratory findings <u>and</u> consistent with the other substantial evidence of record. <u>See</u> 20 C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence <u>or</u> if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Craig</u>, 76 F.3d at 590 (emphasis added).

Here, in accordance with the above-quoted authority, the ALJ found that Dr. Ahluwalia's opinions neither harmonized with his own records nor with other evidence in the record. (<u>See</u> Tr. 23.) In that regard, the ALJ found that Dr. Ahluwalia's opinions lacked consistency with evidence of Plaintiff's stability and improvement with medication, which evidence included two of Dr. Ahluwalia's own treatment notes, dated January 23, 2015, and November 30, 2015. (<u>See</u> <u>id.</u> (citing, <u>inter alia</u>, Tr. 763 (11/30/15 office visit noting that Plaintiff's "condition appear[ed] to be stable," "no psychiatric complaints [we]re expressed," and "no apparent serious mental status abnormalities" existed), 919 (1/23/15 treatment note reflecting that Plaintiff "[wa]s stable," "doing well on current medication regimen," and "present[ed] as calm, friendly, and relaxed")).) The ALJ also supplied substantial evidence to support his observation that Dr. Ahluwalia's marked limitation in Plaintiff's ability to engage in daily activities conflicted with evidence that Plaintiff could perform those activities independently. (<u>See</u> <u>id.</u> (citing Tr. 287 (Third Party Function Report completed by Plaintiff's live-in friend reporting that Plaintiff cooks and cleans), 631 (report of Dr. Bradford reflecting that Plaintiff "report[ed] being able to bathe, feed, and dress herself"), 669 (3/22/16 treatment note indicating "no limitations in activities of daily living")).)

13

Plaintiff additionally faults the ALJ for "fail[ing] to acknowledge that the [SSA] generally prefers the opinion of Dr. Ahluwalia . . . as [an] examining source[]." (Id. (quoting 20 C.F.R. § 404.1527(c)(1) ("'Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.'")).) However, the ALJ expressly discussed the occasions on which Dr. Ahluwalia examined Plaintiff (see Tr. 21 ("The record reflects that [Plaintiff] had extensive mental health treatment from 2014 through 2016 with [Dr.] Ahluwalia.")) and, by recognizing Dr. Ahluwalia as "a treating source" (Tr. 23), the ALJ necessarily recognized Dr. Ahluwalia as an examining source.

2. Opinions of Therapist Odom

Therapist Odom evaluated Plaintiff on July 22, 2014, and then opined as follows:

> [Plaintiff] continues to need outpatient treatment. She continues to exhibit symptoms of an emotional disorder that interfere with day to day functioning[,] that adversely affect her relationships[,] that have an adverse affect [sic] or impairs [sic] her work performance[,] and she is unable to alleviate these symptoms on her own[] and is in need of medication management.

(Tr. 642.) The ALJ accorded those opinions "some weight," noting that "[l]icensed clinical social workers [like Therapist Odom] are not identified as acceptable medical sources, but 'other' sources," and that "reports about an impairment must come from acceptable

14

medical sources." (Tr. 23.) The ALJ further found that Therapist Odom's opinions lacked consistency "with evidence that [Plaintiff] experienced improvement with medication, and ha[d] been described as stable recently in the record" (id. (citing Tr. 757, 763, 766, 768, 770, 776, 778, 780, 782, 849, 860, 916, 919, 926)), but harmonized "with [Plaintiff] being observed at times with anxiety symptoms, which she reported worsened in September 2016" (id. (citing Tr. 641, 753, 785)).

Plaintiff objects to the ALJ "not acknowledg[ing] or discuss[ing] the [SSA]'s clear preference for treating source evidence" (Docket Entry 12 at 9 (quoting 20 C.F.R. § 404.1527(c)(2)(ii) ("'[W]hen the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.'" (bold font omitted))), and notes that "[t]he ALJ did not find, or even suggest, that . . . Therapist [Odom] lack[ed] 'reasonable knowledge' of Plaintiff's impairments" (id. at 10). However, Plaintiff has conceded (see id. at 11) and the ALJ correctly recognized (see Tr. 23), that Therapist Odom does not constitute an "acceptable medical source" under the regulations, 20 C.F.R. § 404.1513(a) (defined to include, inter alia, "[l]icensed or certified psychologists"), but rather an "[o]ther source[]," 20

C.F.R. § 404.1513(d)(1).[8] Social Security Ruling 06-03p, <u>Titles II</u>
<u>and XVI: Considering Opinions and Other Evidence from Sources Who</u>
<u>Are Not "Acceptable Medical Sources" in Disability Claims;</u>
<u>Considering Decisions on Disability by Other Governmental and</u>
<u>Nongovernmental Agencies</u>, 2006 WL 2329939 (Aug. 9, 2006) ("SSR 06-
03p") addresses the significance of the distinction between
"acceptable medical sources" and "other sources" as follows:

> The distinction between "acceptable medical sources" and
> other health care providers who are not "acceptable
> medical sources" is necessary for three reasons. First,
> we need evidence from "acceptable medical sources" to
> establish the existence of a medically determinable
> impairment. Second, only "acceptable medical sources"
> can give us medical opinions. Third, <u>only "acceptable</u>
> <u>medical sources" can be considered treating sources . . .</u>
> <u>whose medical opinions may be entitled to controlling</u>
> <u>weight</u>.

SSR 06-03p, 2006 WL 2329939, at *2 (emphasis added) (internal
citations omitted). Thus, Plaintiff's assertion that the ALJ erred
by not explicitly recognizing Therapist Odom as a "treating source"
(Docket Entry 12 at 9-10) lacks any merit.[9]

---

[8] Applicable to claims filed on or after March 27, 2017, the Commissioner
enacted substantial revisions to Section 404.1513. This Recommendation applies
the version of Section 404.1513 in effect on July 26, 2013, the protective filing
date of Plaintiff's instant claim for DIB (<u>see</u> Tr. 14).

[9] Notably, Plaintiff does not argue that Therapist Odom worked so closely
under a psychiatrist's supervision that she offered her opinions while acting as
the agent of an acceptable medical source (<u>see</u> Docket Entry 12 at 11). <u>See</u>
<u>generally</u> <u>Taylor v. Commissioner of Soc. Sec. Admin.</u>, 659 F.3d 1228, 1234 (9th
Cir. 2011) (holding that nurse practitioner could qualify as "acceptable medical
source" where she worked under physician's close supervision such that she acted
as physician's agent); <u>Padrta v. Colvin</u>, No. 3:12-CV-01521, 2014 WL 1236185, at
*6 (D. Or. Mar. 25, 2014) (unpublished) (holding where "[t]here is no evidence
that the nurse practitioner work[ed] closely with and [wa]s supervised by an
acceptable medical source[,] . . . the ALJ is only required to give a germane

Plaintiff nevertheless contends that the ALJ must still evaluate opinions from "other sources" like Therapist Odom under the "factors set forth in 20 C.F.R. § 404.1527(c)" (id. at 11), and argues that, "the ALJ failed to acknowledge that the [SSA] generally prefers the opinion of . . . Therapist [Odom] as [an] examining source[]" (id. at 10 (quoting 20 C.F.R. § 404.1527(c)(1) ("'Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.'"))).  However, in accordance with Section 404.1527(c), the ALJ found that Therapist Odom's opinions neither harmonized with her own records nor with other evidence in the record.  (See Tr. 23.)  In that regard, the ALJ found that Therapist Odom's opinions lacked consistency with evidence of Plaintiff's stability and improvement with medication, which evidence included Therapist Odom's own treatment note dated

reason to reject [the nurse practitioner's] opinion"); see also Martin v. Colvin, No. 1:14CV516, 2015 WL 5944455, at *10 (M.D.N.C. Oct. 13, 2015) (unpublished) (instructing ALJ to reassess conclusion that counselor did not constitute acceptable medical source where supervising psychologist signed off on counselor's opinions), recommendation adopted, slip op. (M.D.N.C. Nov. 3, 2015) (Biggs, J.).  Moreover, although Plaintiff visited Simrun Health Services, Inc. (later identified as Trinity Behavioral Healthcare PC) on multiple occasions from 2013 to 2016 (see Tr. 617-28, 637-47, 748-86, 899-940), the record contains only one treatment record from Therapist Odom on July 22, 2014, the same date that Therapist Odom provided the opinion in question.  (See Tr. 638-42.)  Thus, doubt exists whether, at the time Therapist Odom prepared the opinion at issue, she would qualify as a treating source under the regulations, even if she constituted an "acceptable medical source."  See 20 C.F.R. § 404.1527(c)(i) ("When the treating source has seen [a claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the SSA] will give the source's opinion more weight then [the SSA] would give it if it were from a nontreating source.").

17

July 22, 2014.  (See id. (citing, inter alia, Tr. 782 (noting that Plaintiff "ha[d] not had a bad depressive episode since April [2014], [and] report[ed] that she [wa]s stable at th[at] point")).) Moreover, the ALJ's analysis of Therapist Odom's opinions clearly acknowledged that she examined Plaintiff (see Tr. 23), and Plaintiff cites no authority requiring ALJ to explicitly discuss every factor in Section 404.1527(c).  See Moore v. Colvin, No. 6:15-cv-2430, 2016 WL 4374847, at *2 (D.S.C. Aug. 17, 2016) (unpublished) (observing that "the Fourth Circuit ha[d] not mandated an express discussion of each factor" in Section 404.1527(c)).

3.  Opinions of Dr. Bradford

On March 31, 2014, Dr. Bradford performed a consultative psychiatric evaluation of Plaintiff (see Tr. 630-36), and diagnosed Plaintiff with bipolar disorder type I, most recent episode manic, and rule-out post-traumatic stress disorder (see Tr. 634).  As a result of those impairments, Dr. Bradford opined that Plaintiff would suffer moderate difficulty performing work activities on a consistent basis (see Tr. 634), marked difficulty interacting with co-workers and the public, as well as dealing with the stress of a competitive work environment, but no difficulty understanding and accepting instructions from supervisors (see Tr. 635).

The ALJ discussed Dr. Bradford's opinions, and then afforded them "little weight," noting that Dr. Bradford's marked limitations

18

conflicted "with evidence that [Plaintiff] experienced improvement with medication, and ha[d] been described as stable recently in the record." (Tr. 22 (citing Tr. 757, 763, 766, 768, 770, 776, 778, 780, 782, 849, 860, 916, 919, 926).) The ALJ further found that Dr. Bradford's opinions lacked consistency "with evidence that [Plaintiff] was able to return to college in 2016, which suggest[ed] that she [wa]s capable of a degree of functioning that [wa]s inconsistent with th[ose] opinion[s]." (Id. (citing Tr. 849 (reflecting Plaintiff's statement to medical provider that "she [wa]s ok to go home as she [wa]s worried about her college and [could not] miss class").)

Consultative examiners such as Dr. Bradford do not constitute treating sources under the regulations, see 20 C.F.R. § 404.1527(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), recommendation adopted, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.). The ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or she affords to such opinions. See 20 C.F.R. § 404.1527(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, the ALJ must "consider all of the . . .

factors [in 20 C.F.R. § 404.1527(c)(1)-(6)] in deciding the weight [to] give to <u>any</u> medical opinion." (emphasis added)).

As Plaintiff did with Dr. Ahluwalia and Therapist Odom, she argues that, "the ALJ failed to acknowledge that the [SSA] generally prefers the opinion of . . . Dr. Bradford . . . as [an] examining source[]" (Docket Entry 12 at 10 (quoting 20 C.F.R. § 404.1527(c)(1) ("'Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.'"))). However, the ALJ's analysis of Dr. Bradford's opinions clearly acknowledged that he <u>examined</u> Plaintiff (see Tr. 22), and Plaintiff cites no authority requiring the ALJ to <u>explicitly</u> discuss every factor in Section 404.1527(c). See Moore, 2016 WL 4374847, at *2 (observing that "the Fourth Circuit ha[d] not mandated an express discussion of each factor" in Section 404.1527(c)).

Plaintiff also challenges the ALJ's reliance on Plaintiff's "'return to college in 2016'" to discount Dr. Bradford's opinion (Docket Entry 12 at 11 (quoting Tr. 22)), characterizing the ALJ's remark as "a *highly* selective statement of what actually occurred" (<u>id.</u>). According to Plaintiff, she "testified she tried to go to community college twice but had to quit due to her bipolar disorder" (<u>id.</u> (citing Tr. 38-39)) and "also quit university studies" (<u>id.</u> (citing Tr. 623)). However, the ALJ did not find that Plaintiff <u>completed</u> any colleges courses, let alone obtained

a degree; rather, the ALJ merely noted that the ability to <u>attend</u> college courses reflected a level of mental functioning inconsistent with Dr. Bradford's opinions that Plaintiff had marked difficulty interacting with co-workers and the public and dealing with the stress of a competitive work environment.  (<u>See</u> Tr. 22; <u>see also</u> Tr. 635.)

4.  <u>Consistency Between the Opinions and With the Record</u>

Plaintiff next maintains that, "most critically, the ALJ evaluated the[] opinions [in question] only *in isolation of each other*, without considering the consistency *between them*."  (Docket Entry 12 at 10.)  According to Plaintiff, "[i]t cannot be reasonably disputed that the consistent assessments of independent examiners are powerful, probative and very relevant evidence" (<u>id.</u>) that "must always be evaluated" (<u>id.</u> at 11 (citing 20 C.F.R. § 404.1527(c)(4))).  This argument fails because Plaintiff neither explains how the opinions qualify as "consistent" with each other, nor how an express comparison of the opinions by the ALJ would have undermined the ALJ's findings that all three of the opinions in question lacked consistency with "evidence that [Plaintiff] experienced improvement with medication, and ha[d] been described as stable recently in the record" (Tr. 22, 23 (citing Tr. 757, 763, 766, 768, 770, 776, 778, 780, 782, 849, 860, 916, 919, 926)).  (<u>See</u> Docket Entry 12 at 10-11.)

Plaintiff also argues that, contrary to the ALJ's findings (see Tr. 22-23), the record contains ample evidence 'consistent' with the opinions of Drs. Ahluwalia and Bradford and Therapist [Odom]" (Docket Entry 12 at 12-13). In that regard, Plaintiff cites to her own subjective reports to medical providers and clinical findings throughout the relevant period in this case which she contends support the opinions of Drs. Ahluwalia and Bradford and Therapist Odom. (Id. at 13-16 (citing Tr. 40, 44, 597-99, 618-21, 626-28, 638, 641, 753-54, 755, 757, 759, 761, 763-66, 768, 770, 772, 775-76, 778-81).) In so arguing, Plaintiff misinterprets this Court's standard of review. The Court must determine whether the ALJ supported his decision to discount the opinions in question with substantial evidence, and not whether other record evidence weighs against the ALJ's analysis, Lanier v. Colvin, No. CV414-002, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."). Here, as discussed above, the ALJ detailed substantial evidence warranting the discounting of the opinions at issue. (See Tr. 22-23 (citing Tr. 287, 631, 669, 757, 763, 766, 768, 770, 776, 778, 780, 782, 849, 860, 916, 919, 926).)

5. <u>Non-Examining State Agency Consultants</u>

Lastly, Plaintiff challenges the ALJ's assignment of significant weight to the opinions of the state agency psychological consultants (<u>see</u> Tr. 22), noting that the consultants offered their opinions in May and October 2014 (<u>see</u> Tr. 101-05, 117-21), "prior to a substantial portion of the record." (Docket Entry 12 at 17.) Plaintiff contends that her "condition continued to deteriorate after th[o]se opinions were rendered," and "the ALJ was required to consider the fact that the [] consultants did not consider all of the relevant evidence." (<u>Id.</u> (citing 20 C.F.R. § 404.1527(c)(3), (6)).)

The applicable regulations make clear that, although, as a <u>general</u> matter, opinions from an examining source deserve more weight than those from a non-examining source, <u>see</u> 20 C.F.R. § 404.1527(c)(1), non-examining state agency consultants constitute "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation[,]" 20 C.F.R. § 404.1527(e)(2)(i). Indeed, ALJs can permissibly credit the opinions of non-examining state agency consultants, who typically render their opinions without the benefit of a full record, over those of examining sources, to the extent the non-examining sources' opinions remain consistent with the evidence received subsequent to their opinions. See <u>Lapeer v.</u>

<u>Astrue</u>, No. 5:08-CV-256-D(1), 2009 WL 2487038, at *7 (E.D.N.C. Aug. 13, 2009) (unpublished).

In this case, the ALJ accorded "significant weight" to the state agency psychological consultants' opinions "because they [we]re consistent with <u>the great majority of the evidence of record</u>" and "with evidence that [Plaintiff] experienced improvement with medication, and ha[d] been described as stable <u>recently in the record</u>." (Tr. 22 (emphasis added).) Thus, as emphasized above, the ALJ properly considered the consistency of the consultants' opinions with evidence received after the consultants offered their opinions, and Plaintiff has not provided any argument or reasons why the ALJ's analysis in that regard fell short (<u>see</u> Docket Entry 12 at 17).

Under such circumstances, Plaintiff has not shown prejudicial error with respect to the ALJ's evaluation of the opinions of Dr. Ahluwalia, Therapist Odom, and Dr. Bradford.[10]

---

[10] Plaintiff also argues that, if the ALJ "ha[d] questions regarding . . . the consistency of [the opinions in question] with the underlying record, he had numerous options, . . . [such as] obtain[ing] testimony from a medical expert [('ME')], sen[ding] the file back to the [SSA's] non-examining consultant for review of the entire file, arrang[ing] for a more up-to-date consultative examination, or even recontact[ing] any of the examining providers with questions or for clarification." (Docket Entry 12 at 17 (citing 20 C.F.R. § 404.1520b(c)(1), Social Security Ruling 12-2p, <u>Titles II and XVI: Evaluation of Fibromyalgia</u>, 2012 WL 3104869 (Jul. 25, 2012) ("SSR 12-2p"), HALLEX § I-2-5-34).) However, Section 404.1520b(c) and SSR 12-2p describe options available to an ALJ with <u>insufficient evidence to determine the issue of disability</u>, <u>see</u> 20 C.F.R. § 404.1520b(c)(1); SSR 12-2p, 2012 WL 3104869, at *4-5, a circumstance not present here. Moreover, the HALLEX section provides that an ALJ <u>may</u> obtain an opinion from an ME if the ALJ "[b]elieves an ME may be able to clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing." HALLEX § I-2-5-34. That section clearly does not mandate that an ALJ consult an ME each time he finds a medical

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, Plaintiff's Motion for Judgment Reversing or Modifying the Decision of the Commissioner of Social Security (Docket Entry 11) be denied, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 7, 2019

---

opinion inconsistent with the overall evidence of record.